Case number 19-2569 Eastern Arkansas, Stansel Prowse v. Dexter Payne, et al. Mr. Rohlf, we're prepared for your argument. Thank you, Your Honor. I'm here today for Stansel Disphoria. It's a highly treatable condition, and there is an emerging medical consensus on its treatment that includes hormones and feminizing accommodations. There are three issues, the Eighth Amendment claim, the Equal Protection claim, and a request to remand to allow amendment of the complaint. My adversary places much emphasis on the Reed v. Griffin case. I would say to the court, it is not controlling, and in fact, I would argue it's barely relevant. The plaintiff in Reed did not have a diagnosis of gender dysphoria, and the state presented three separate opinions that the treatment she was getting was appropriate, and it did not include hormones. The court did not order a trial. Here we have someone who has a gender dysphoria diagnosis from a psychiatrist, but was put up against a committee as gatekeeper on a treatment plan. The committee said she could not have hormones, but gave her no reasons. She asked for the reasons. The answer was, because we said so. Then she asked, who said so? And the committee said, we introduced you at our meeting. So, we're not even sure who on the committee made this decision, but a committee made it. There are no medical records, affidavits, statements, reports, or anything of that nature in the record in this case. This court has never, that I could find, affirmed a summary dismissal with no medical evidence at all in the Eighth Amendment. It is our client's position that Arkansas, while it has a policy of providing hormones, in fact, never does. I expect my adversary to stand up here today and tell you that the state is giving Stansell-Prowse hormones, because that's what she said to me yesterday at the hearing. The way to treat that kind of evidence is to send it back to the district judge. Maybe we'll lose on summary judgment, but that is not the posture of the appeal. The posture of the appeal is to take the record as is with favorable inferences to the plaintiffs. Counsel, can you help me? So, I'm looking at the Prowse complaint, and I do think that the Prowse complaint does, and the amended complaint, excuse me, does allege enough to say it's a serious medical need under our precedent. But where I'm having trouble is even giving all-due deference to a pro se litigant. I don't see where the complaint itself, and that's the operative document, as you know, for a motion to dismiss, where the complaint itself sets up the deliberate indifference. In other words, I just don't see it. And maybe you could point to some specific language in the complaint that gets me there. Well, I will try to do that, your honor. She alleges that a licensed psychiatrist, Dr. Giggleman, diagnosed her with gender dysphoria, but that the transgender committee would not let her have hormones and would not make a medical decision on that point. The way, the other thing that has to be read with the complaint is the Arkansas directive, which is in the record in the addendum to the brief, pages 9 to 11, that sets up this committee and its powers. It has the power to do a treatment plan, not the licensed doctor. So she had to go to the committee. The first time she went to the committee, they said, you don't have a diagnosis, go away. Then she went back and to the doctor and say, will you give me a diagnosis so I can see the committee? He gave her a diagnosis. She went to the committee and the committee said, you don't need hormones. Now, if they could show that was a acceptable care decisions, we might not win summary judgment, but that's not the standard here. And the committee as gatekeeper is the actor that committed the deliberate indifference under the second arm of the test, not the serious. Is every one of the committee members a medical professional? No. I don't know that any of them are. You can't tell from the record. The committee directive says that there are four or five members of the committee. Some are drawn from classification. Some are drawn from mental health and one from the medical department. But it doesn't say that those are the people who will sit because it says those folks or their designees. So we don't know who they designated and whether they had any training in transgender care. The one thing the committee directive does say is that they're supposed to approve a treatment plan individually tailored to each patient. That's not in the record. There's no record that they have a treatment plan for the plaintiff. And that's deliberate indifference on these facts once there's a diagnosis that's sent to the committee. And I think that's given the favorable inferences from the record about as far as I can go, Judge Strass, in trying to explain why I believe there is deliberate indifference on the complaint. Now, the only maybe you can correct me if I'm wrong, but the only the only reference I see in the complaint is with respect to the defendant here. It says, quote, she is also a leading member of the Gender Dysphoria Committee and is licensed to treat both medical and mental disorders or authorize the treatment of such. Is that right? Are there other mentions? I'm just trying to figure out how we can identify the deliberate indifference part. I want to give all this is a pro se. I want to give all due deference to treating it liberally. I think she was talking about defendant Griffin there, if I'm remembering right. Interestingly, Griffin is the same Griffin as in Reed versus Griffin. It's the same defendant in both cases. The person in charge of mental health. And I don't know if she sat on the committee or she was named because that I just don't know which it was because our client wasn't granted a list of who the committee people were. But let's assume that it was this person. She could still be outvoted and we don't know whether she's a physician and could actually prescribe medicine. So what we're asking for is some evidence that there was an effort by the state of Arkansas to provide a professional judgment to this plaintiff. The one thing that links all of this court's decisions on transgender inmates going all the way back to White is an acknowledgement that there needs to be a an appeal where the inmate won. And the court said no, there was not enough deference to the professional judgment of the doctors in the prison. Long actually went to trial. And in that case, the court observed that Iowa had done a great deal including taking the extraordinary step of sending the inmate out of state trying to treat her. In Reed, there were three professional opinions. And again, the extra mile in that Arkansas asked the district judge in Reed to stay the case so they could get the third opinion because the DSM had been upgraded to say that the condition should be analyzed as gender dysphoria, not gender identity disorder. So they got the third opinion. It was the same as the other two. So there were three opinions. And the question really there, which is to describe it is to show how different it is, was that this court was not going to make the district judges try that kind of case where the state has three separate opinions that agree with each other and the inmate has only her argument that she disagrees with the diagnosis. That's not this case. In fact, this case begins with the diagnosis from the psychiatrist, who is a physician. And the interruption of that diagnosis by a committee, our client should be given the chance to show that that was a blanket denial. That was in fact the policy, not the policy, but the practice of the state, regardless of their written policy. I'd like to also mention the equal protection argument here because the district judges, I think, misconstrued the argument in both of these cases. But I'm just going to reinforce the equal protection argument. No other diseases, no other discrete class of inmates have to go to a gatekeeping committee to get their treatment. Transgender inmates do, whether you look at it as the treatment they're seeking or the status they hold, there's an equal protection issue. There's also an equal protection issue on stereotyping. And I'd like to just quote you briefly from the plaintiff's pleading. She wants to be allowed to groom herself, to dress herself, and to present herself according to her gender identity and allow her to heal from the damages of it being suppressed. It's on page 93 of the appendix. That is very much like a gender stereotyping claim in the style of the Onkali case. And whether you look at it as a discrete class presenting equal protection issues or you look at it as a gender stereotyping case, because she also says in the complaint she's being forced to present as a man, it's an equal protection claim. And I think the Supreme have equal protection rights. It was a Title VII case, certainly. But on remand, this court in the Horton case, where I believe two of the judges sitting today were on the panel, you sent it back to the district judge to review again in light of Bostic. And I think that Council, I want to ask you, and I'm kind of going back to the complaint, because again, other than you're right, we need to consider the policy as well. But on the first page of the amended complaint, the complaint says, denied me hormone therapy as a means of treatment, as well as any other forms, dating hormone therapy was not clinically indicated nor recommended. I know that that's a characterization of what the committee had done, but I don't see any allegations here that suggest that any doctor had recommended hormone therapy. This is just an assertion by Prowse that I am entitled to hormone therapy. Shouldn't there need to be some, for this claim to succeed, some allegation that I am entitled to this because some doctors said that we do have some of that evidence in Butterfield, because we have the Osborne report. We don't have any of this here. We don't have it in the complaint. We don't have an assertion or anything at the time. Isn't that necessary? Well, I would back up just a bit on in my response, Your Honor, because your first premise was that was a characterization of what the committee did. Actually, it was a quote. The committee said that hormones are not clinically indicated or recommended, and it's an odd way for a committee to say something, but that's actually what they wrote, according to the grievance. Well, recommended by whom, as I said in my brief? Recommended by the committee. Who on the committee? Recommended by Dr. Gagelman. I tried to get the Gagelman report. It's not in the record. It would be interesting whether he just sent it to the committee or he did a narrative. Some discovery should have been available here to flesh out what the decision and how it was and how it was made. That's absent. And she says that she thinks she should have been given a professional judgment. Well, I think she should have, too, and I think that's the point. Once you've got the professional judgment, you get into this hazy area of is it just disagreement and so on. But the threshold that it must be a professional judgment has to be met, and it was not met on this record. Well, and you brought up an interesting point. That's really what I'm getting at. You know, based on the allegations, is this just a disagreement with the committee? And it appears, I mean, even by these by these allegations that at least some of the members of the committee had professional medical judgment, because on page two, for example, it says is licensed, and I read this earlier, to treat both medical and mental disorders or authorize the treatments as such, with reference to Griffin, I think you said it was. And so I'm just trying to figure out where this falls on the continuum. Based on the allegations, is this just a simple disagreement? Or is the allegation here that there's no medical judgment at all? And if so, where's that in the complaint? Well, the allegation is that there's a blanket practice of denying it, even if it's allowed in theory under the policy. And where's that in the complaint? I think the word blanket is used repeatedly in her opposition to dismissal. I'm not sure she uses the word blanket in the complaint itself. I would urge the court to also consider the opposition to the dismissal motion, because it's much more lengthening is from a pro se plaintiff. But she makes her point quite clear that she thinks the state is applying a blanket policy. And until yesterday, so did I. I don't know what is going on in practice with their recent conversion to hormones in in delivering them if they are. But as of the record in this case, they were not doing it as a matter of practice. And the gatekeeper was the committee. Without an allegation, I mean, we don't have an allegation of that. And I know you didn't go get get into discovery. But is there any I mean, what's the basis, I guess, for that? What would what should have been that allegation that as a blanket matter, they're denying it? Is there any basis, information and belief, anything like that, that would suggest that that's the case? Well, I think if you look at the way they responded to the grievances, it's there. They say it was a clinical decision, but they wouldn't say who made the decision. I think you have to look at this in part as how extraordinary this gatekeeping function really is. If we had a cisgender woman in her middle ages who wanted estrogen because her body wasn't making it anymore, she wouldn't be sent to a committee. But a transgender patient would be. And I know that's equal protection, but it's also Eighth Amendment. They overlap here. They have created a barrier to the Eighth Amendment for this group of people. And I think it would be fair to argue that that affects the deliberate indifference standard and should be figured into the analysis of the court on the second arm of the Eighth Amendment test. There's no question they knew that she felt she should have hormones if they had presented anything from a doctor. But they didn't. There's just nothing in the record. We didn't even tell our children you can't because I said so after a certain age. But that's what they did here. And I think there is a right under this court's cases and even going all the way back to Estelle to have a professional medical judgment made. And that's not here. I have very little time left, so maybe I would save it for rebuttal if I could. You may. Ms. Hutch guest. Yes, thank you. Good afternoon. And may it please the court. I am Senior Assistant Attorney General Kat Guest, and I represent the Arkansas Department of Correction, Appalese in this matter, who are Rory Griffin, the Deputy Director of Health and Correctional Programs, and Bob Parker, who is the Mental Health Administrator at the ADC. Your Honors, Ms. Krause asked this court in the district court to do what no medical professional had done, Judge Krause, as you pointed out initially, and that is to order that she be provided hormone replacement therapy, even though at the time of her request, that particular treatment had never been prescribed. And as the record supports, was not medically or clinically indicated or recommended to treat her diagnosis of gender dysphoria. And so consistent with this circuit's case law, the principal complaint or the core of Ms. Krause's argument amounted to a mere disagreement with medical treatment, something that this court has never held violates the Eighth Amendment. And so the district court was right, even at the motion to dismiss this standard, to dismiss this case, because there were simply no allegations in the complaint supporting deliberate indifference. And as to the blanket prohibition, the district court correctly determined, based on the record and review of the policy at issue, Administrative Directive 1419, the ADC does not have a blanket prohibition on hormone replacement therapy. And so we would ask this court to affirm the district court's dismissal. In the interim, before I get to my substantive arguments, Ms. Krause has continued to receive appropriate medical care and as of May 2020 is receiving hormone replacement therapy. And so this court lacks jurisdiction over the appeal because there is no continuing case or controversy as a point that Ms. Krause is receiving hormone replacement therapy, the very thing she requested in her injunctive relief. And so she can't satisfy Article 3 standing. And so this appeal should be dismissed as moved. Counsel, what do we do with that? I want to ask you about that because I heard opposing counsel mention that too. We don't have any briefing. We don't have anything in the record. And so obviously, you know, we need something to substantiate that. How would you recommend that we proceed from here if in fact the case is moved? Because I mean, and I'm wondering whether there's damage. I take it there's no damages. This is all for the hormone therapy itself. So how would you have us proceed? You know, I'm not quite sure about that, Judge Strauss. I think counsel, I learned this issue on Monday. And as Mr. Rowe pointed out, reached out to him on yesterday to determine if he would inform the court via 28J type letter that Ms. Krause is currently receiving the hormone replacement therapy. And I understand she has been receiving it for some time. I was not aware that Mr. Rowe didn't know this. I assume that this would be reported by Ms. Krause. And so I think counsel could submit after oral argument letters after Mr. Rowe has an opportunity to visit with his client the fact that Ms. Krause is currently receiving gender hormone replacement therapy. And if so, then the court is obligated to dismiss this motion. Would we need a motion to dismiss the appeal given that it's hard for us to take evidence and record evidence? In other words, if the plaintiff does not want it dismissed, and you're arguing it's moot, it seems like that puts us in a sort of an interesting position. Maybe it gets remanded. I don't know what would happen there, but it almost seems like you would to agree. But I'm kind of thinking it through as I sit here, not having realized that this might be an issue raised today. One of my thoughts about it, Judge Kelly, is that the court could grant permission to enlarge the record. My position is that the case is moot and should be dismissed. And I would be happy to file a motion to dismiss to that effect, asking the court for permission to to supplement the record demonstrating that Ms. Krause is currently receiving the hormone replacement therapy, which would alert the court of the jurisdictional issue, which can be raised at any time and can be addressed by this court at any time. Is there any, and maybe you don't know the answer to this, but this would be a good reason to get additional briefing. Is there any chance that it could be discontinued? So what I'm really saying is oftentimes, and I'm suggesting this is happening here, litigants do things in advance of litigation in order to moot the case. That happens sometimes. Is this a, you don't have any idea, is this a permanent decision? Is it a temporary decision? Is it reviewed every six months? I mean, do you have any idea about that? I do not have any idea about that. Ms. Krause's medical treatment is separate and apart from the litigation. I found this out on Monday, which I think gives the court some comfort. I mean, this was not a decision made when she filed the lawsuit or in an effort to evade oral argument or a decision by this court. It happened in the natural progression of her continuing medical treatment as an inmate at the Arkansas Department of Correction. And so I don't think that there's anything to support that this decision was made for the purposes of mooting out this case in some disingenuous or nefarious manner. Additionally, Judge, I think the Supreme Court in this circuit, when those types of decisions are made by the government, the government is given the benefit of the doubt that they aren't taking steps to simply moot out the case to avoid a judgment. And I might add, the government prevailed below. I know there was no impetus for attempting to moot out a case. We prevailed on motion to dismiss. The law in this circuit supports affirmance in this matter. Clearly, the Reed versus Griffin decision supports affirmance. And so I hope I've answered your question. I'd like, if I haven't, you know, I'd like to spend some time getting to the substantive issues because I think that ties into it. This court's decision, Reed versus Griffin, is the controlling law in this circuit. It establishes that inmates' disagreement with medical treatment does not state an Eighth Amendment claim. And more specifically, as it relates to gender dysphoric inmates, the law that says that inmates don't have a constitutional right to hormone replacement therapy has been the law in this circuit for 30 years, Judge Walman. In Reed though, if I'm remembering correctly, Reed had not been diagnosed with gender dysphoria, correct? So that it never got to the next step of whether or not she had been recommended for treatment. So I struggle with it being sort of dispositive of this one because it seems that what we have here is a plaintiff alleging in a complaint, I have been diagnosed with gender dysphoria. And as I read the complaint saying, I have gotten no medical care. And so if someone were to submit a complaint that says I've been diagnosed with this specific disorder and the prison is not treating me at all, that seems to at least make the allegation that it is just being ignored. And that's viewing it in the light most capable to the one submitting the complaint. But isn't that where this is different than Reed? Respectfully no, Judge Kelly. And that is because the Reed decision sets out both for deliberative difference. Reed decision says you have to have a diagnosis. Miss Reed did not have but the decision expressly says or recommendation that gender or that hormone replacement therapy is appropriate for a diagnosis. And so when you read those two statements together, the Reed decision stands for the proposition that you've got to have a diagnosis. And you've also got to have a recommendation by a medical or mental health professional that this particular medical treatment is what's appropriate for the diagnosis. Because as the case law explains, there is a wide variety of treatment for gender dysphoria. There is not a cookie cutter. Not all gender dysphoric inmates require hormone replacement therapy. What about the assertion that she's getting no medical care? Where do we place that? And that seems to indicate just nothing at all. No psychiatric care or counseling or any other kind of treatment for the gender dysphoria. Does that speak to not necessarily whether hormone treatment is appropriate for this plaintiff, but that it hasn't even been looked at? So Judge Kelly, those conclusory statements are not borne out by the record. And if you look at the appendix, Ms. Prouse attached several of her grievances where she is being informed that while hormone replacement therapy has not been medically or clinically indicated, she is currently receiving psychotherapy and other medications. What you'll see in appendix, I believe at pages 96, 130, and 134, is that Ms. Prouse is aware and agrees, acknowledges that she's receiving psychotherapy and psychiatric medications, but that she disagrees that that is the treatment she should receive and then continues to request hormone replacement therapy. And so there are some cases that suggest that when an inmate is not receiving any treatment whatsoever, or where the Department of Corrections is ignoring their request to be evaluated or even seen, that that might present an Eighth Amendment claim. And we don't have either of those here. She requested to be evaluated. Dr. Giggleman evaluated her. She was not ignored. That is not deliberate indifference. She received an evaluation and a diagnosis of gender dysphoria. She was not ignored. That's not deliberate indifference. She is currently or was at that time being provided psychiatric counseling and mental health treatment. She wants hormone therapy. And the complaint doesn't suggest or demonstrate that any mental professional has recommended that. And what's important is this court has summarily affirmed a decision just like this, the Seeger versus Norris case. And what's compelling about that case is that dismissal happened pre-service, so not even at the motion to dismiss stage. And like Prouse, both of these inmates had requested hormone therapy, put into the record their grievance responses, and had repeatedly maintained that for their gender dysphoria, they required hormone therapy. Can I ask just one clarifying question? I just want to ask, you mentioned the grievances now twice. Are you Prouse or Prouse submitted those grievances? I didn't mean to interrupt, but I just want to understand, because usually we don't consider grievances at the motion to dismiss stage. So I'm just wondering, but it sounds to me like it was submitted. I may have misspoken. I was attempting to answer Judge Kelly's questions by noting that this court could refer to the record to affirm, because those grievances appear in the record. I don't think the grievances that I pointed out from the appendix were attached to the complaint. Okay. I'm sorry. I just wanted to clarify that. Thank you. Yes. But, you know, in the Seeger case, this court summarily affirmed, and that case is almost identical to this one. Both inmates maintained that they required hormone treatment therapy or hormone replacement therapy, and no medical provider had recommended that. Ms. Prouse in reply argues that the reason this court could summarily affirm is that I mean, both of the inmates relied on grievance responses and statements from Bob Parker, the mental health administrator, indicating that that particular treatment was not clinically recommended or indicated. And then when Ms. Seeger asked for a petition for rehearing, this court denied a petition for rehearing. So even before the Reed decision, we already have a case from this circuit that supports that. Even that motion to dismiss or resurface, it's appropriate to dismiss a case when it's clear from the pleading that there's just a disagreement about whether or not hormone therapy should be prescribed. I have a follow-up question from, as I had a similar question as Judge Strauss. I think one of the factors in this case that I find difficult is sort of knowing what folks are considering to be the complaint. We've got a pro se complaint, and then there's been references to grievances and sort of other information. Maybe I should ask both counselors, what are the documents that we're limited to at the motion to dismiss state in this case? Because it seems to me that once you start getting into these other documents, we really have got a conversation going about really what's going on. But what do you think we should be looking at to decide this at the motion to dismiss? You should be looking at the complaint, and I think it would be appropriate to look at her objections to the motion to dismiss because the district court opined that it reviewed her objections in considering whether or not to adopt in its entirety the magistrate's recommendation. And that is where she initially makes her argument that there's a blanket policy, and there is not. I'll come back to that. But even if you consider all of it, Judge Kelly, that's my point. In the appendix, what you will find is there is not a recommendation or a diagnosis by a medical or mental health professional that hormone therapy is appropriate, and the record does not support an allegation that Ms. Prowse is not receiving any medical treatment whatsoever, and so this court should dismiss. Turning to Ms. Prowse's argument that the ADC has a blanket policy or de facto policy, that allegation is not borne out in the record either. If you look at AD 1419, it expressly says under Section 6, which is the section dedicated to treatment, that hormone replacement therapy will be prescribed or will be provided even while the person is incarcerated if it's medically necessary. And the identification of the committee members include mental health, medical designees, the medical director, and a classification officer. And so these folks operate and work in both the mental health and the medical arenas when they're making these decisions. Cases that discuss whether or not there's been a lack of medical judgment don't discuss the makeup of the gender dysphoria committee. What they discuss is whether or not there's a blanket policy that absolutely prohibits prescribing hormone therapy for some reason other than an individualized treatment. And in the ADC, the inmates do get an individualized review by the committee. So for example, in Hicklin and in the Fields case in the Seventh Circuit, those inmates were not provided hormone therapy because the DOC said either you can't get hormones unless you receive them in the free world, otherwise known as a freeze frame policy, or we don't give them to you if you're within six months of your parole eligibility or release date. And so that's when you're talking about lack of judgment, when the policy just de facto excludes you from even being considered. Here you do have a committee that is considering an individualized treatment plan and that is also authorized to provide hormone therapy if it's medically necessary. Are those committee members all medical professionals or are they designees as Mr. Roll has suggested? I'm not sure 100 percent of the time. They all should be medical designees. I mean there's a psychiatrist that sits on the committee, the medical director, Rory Griffin is the deputy director of health and correctional programs, and Bob Parker is the mental health administrator. And so it's not as if the committee designates a correctional officer to take their place on the committee. Those designees, as I understand it, fill the role of either medical or mental health. At this court, I want to go back to another issue with regard to this idea that Ms. Prowse should be allowed to fling wide the gates of discovery to determine whether or not the ADC has a practice, a de facto practice of excluding hormone therapy. I mean she's receiving it. I think that's the most compelling evidence that there is not a policy. There's not a blanket prohibition. And when courts consider whether or not there's a prohibition of hormone replacement therapy or some other treatment for gender dysphoria, they look at the policy and they conclude that if the policy is silent on that treatment, then there's perhaps a de facto exclusion of that particular course of treatment. In this case, there's not a blanket prohibition and the policy is not silent. It expressly says hormone replacement therapy will be given if it's medically necessary. But that doesn't make much difference if the complaint said based on information and belief, my knowledge is that 20 inmates have asked for hormone therapy and all 20 have been denied. So regardless of what the policy says, at that point, we would be facing a different case, wouldn't we? Possibly. I struggle with whether or not information and belief would be sufficient under Iqbal and Twombly to move from a mere possibility to a plausibility standard, which is what's required in this case. And we don't even have those allegations in this complaint. And so we're just not even anywhere close to a federal rule of civil procedure, Iqbal or Twombly, where there are allegations that would even be plausible that Ms. Prowse is suffering from an Eighth Amendment violation. I see that my time has expired. I'm happy to continue answering questions if there are. If I might have a short just conclusion for the reasons I've stated, this case is either moved and should be dismissed or in the alternative, there just is insufficient facts supporting anything other than a mere disagreement with medical treatment, which doesn't satisfy the Eighth Amendment. I thank the court for your time and attention. We thank you for your argument. Mr. Rowland, I think you have some rebuttal reserved. Yes, Your Honor, I was unmuting myself. I have very little left. I would just say that I believe counsel has misconstrued the standard at the 12B6 stage. It's not up to the plaintiff to go more than allege a constitutional claim. She need not support it in the record. That's for later. So I want to ask you about that exact point, which is I'm struggling with what we're supposed to look at, too, just like Judge Kelly, and I think I hinted at that. So we have the complaint here, but then we also have in the briefing, and I pulled this up during the course of opposing counsel's argument, multiple instances in which the briefing admits that there is counseling that has taken place. So even aside from the mootness issue, do we take that into account, even though it's not mentioned in the complaint? May I continue to answer that? Yes, please do. I believe that you should, but I don't believe it's definitive. I would like you to focus on page 57 of the appendix, the part of the complaint where she says, I have the diagnosis. It's like having the car without the key. I have the car, but I can't drive it, and I have to pursue it on foot. I think she's being colloquial, but she's believing she should have the hormones. And as to mootness, if I may, Your Honor? Yes, I would like you to address that to the extent you feel you can. Well, I would just call the court's attention to the Supreme Court's ruling in the New York rifle case, where the concealed carry regulation of New York City was repealed after the Supreme Court came before the court, whether that mooted the case. And they decided in an opinion written by the Chief Justice that they would send that back down to determine mootness, because there may be other applications, and there may be other issues, and there would still be a damages claim that would be alive, even if it weren't pled, which is kind of unusual. But here, the plaintiff did ask for money to make her whole, that's on pages 93 and 94, and she asked for general relief. So I think it's not moot, and I would urge the court to remand. Seeing no further questions, we thank you both for your argument in this case, and we appreciate your willingness to appear by video, and we will take the matter under advisement.